The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Taylor. Plaintiff has shown no good grounds to reconsider the evidence or amend the Opinion and Award. However, defendants have shown good grounds to reconsider the evidence and amend the Opinion and Award. Accordingly, the Opinion and Award of the Deputy Commissioner is affirmed in part and reversed in part with regard to the issue of refusal of suitable employment. Furthermore, the Full Commission, in its discretion finds no good grounds to sanction defendants for the late filing of the Form 60 in this case and plaintiffs motion is consequently hereby Denied.
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at and after the hearing as
 STIPULATIONS
1. The parties are subject to the North Carolina Workers Compensation Act.
2. An employee-employer relationship existed between plaintiff and defendant-employer at all relevant times.
3. The carrier liable on the risk is Wausau Insurance Company.
4. Plaintiffs average weekly wage is $477.93.
5. Plaintiff sustained an admittedly compensable injury by accident, which arose out of and in the course and scope of his employment on November 16, 1998.
6. The parties stipulated into evidence as Stipulated Exhibit 1, a videotape of a furniture assembler job.
7. The parties stipulated into evidence as Stipulated Exhibit 2, a packet of records including Industrial Commission forms, documents regarding job and work restrictions and plaintiffs medical records.
 ***********
Based upon the evidence of record, the Full Commission finds as follows
 FINDINGS OF FACT
1. On November 16, 1998, plaintiff sustained an admittedly compensable injury to his back when the tow motor plaintiff was operating ran into a hole and plaintiff was thrown off the forklift. Prior to his compensable back injury, plaintiff worked as a warehouse lead person for defendant-employer for five years. Plaintiffs job duties required operation of a tow motor, bending and stooping.
2. As a result of his injury, plaintiff was treated by Hart Industrial Clinic from November 16, 1998 through December 2, 1998. Since plaintiffs injury was unresponsive to conservative treatment, plaintiff was referred to and treated by Dr. Alfred Geissele, an orthopedic surgeon, from December 30, 1998 through May 19, 1999. Plaintiff also underwent a MRI, which revealed a L5-S1 disc bulge. A second MRI revealed disc desiccation and annular tears at L4-L5 and L5-S1. Plaintiff underwent a discogram, which was positive for pain at L3-4, L4-5 and L5-S1.
3. On May 19, 1999, Dr. Geissele discussed fusion surgery with plaintiff but did not recommend that surgery, as plaintiff would be unlikely to ever return to work thereafter. On May 19, 1999, Dr. Geissele released plaintiff with a 7% permanent partial impairment of his back, recommended that plaintiff pursue pain management with Dr. Hans Hansen to regulate medications over the long term and gave plaintiff permanent work restrictions of no exposure to chronic vibration; minimization of bending and twisting; availability of frequent position changes; lifting 30 to 50 pounds on an occasional basis, 20 to 40 pounds on a frequent basis and 15 to 20 pounds on a constant basis and no standing more than 30 to 45 minutes without a break.
4. Dr. Geissele, plaintiffs treating physician, reviewed the videotape of the pre-assembly job as shown in Stipulated Exhibit 1, and approved the job depicted on the videotape for plaintiff with the additional restrictions of no lifting of drawers, no putting backs on cabinets, must have help with lifting, no operating of forklifts and no standing for more than 30 to 45 minutes.
5. Plaintiff was offered the pre-assembly job by letter from defendant-employer dated September 15, 1999 to begin on September 20, 1999 at 7:00 a.m. However, on September 20, 1999, plaintiff did not report to work as requested but instead reported at 9:15 a.m. wearing sandals, which are not allowed on the manufacturing floor. Plaintiff indicated that he wished to review the job before accepting it. However, plaintiff was not allowed to enter the manufacturing area to review the job on that date as he was wearing sandals. Thereafter, plaintiff made no efforts to return to work at defendant-employers wearing appropriate shoes.
6. Consequently, plaintiff was once again offered the pre-assembly job by letter dated October 15, 1999 which provided detailed information including plaintiffs salary and the specific job activities to be performed including the weight limit which would not exceed fifteen pounds. Furthermore, the letter indicates that defendant-employer would accommodate plaintiffs restrictions by providing a stool for the alternation of sitting and standing. Nevertheless, plaintiff, through his attorney, on October 20, 1999 rejected this job.
7. A Form 24 hearing was held on October 30, 1999 in which defendants requested plaintiffs benefits be terminated for unjustifiable refusal of suitable employment. By Administrative Order dated December 7, 1999, the Executive Secretarys office declined to rule on the issue because it was not appropriate for resolution administratively. Therefore, defendants requested a full evidentiary hearing.
8. John McGregor, a vocational rehabilitation expert, examined the pre-assembly job with the accommodations for plaintiff. According to Mr. McGregor who visited defendant-employers facility and reviewed a pre-assembly job as well as all of plaintiffs records and history, the duties of the pre-assembly job are common to furniture manufacturing. Furthermore, thirty-five employees of defendant-employer perform the duties of a pre-assembly position. Moreover, the use of a stool to sit and stand is not only a reasonable accommodation but would not affect the essential job functions of the pre-assembly job. In fact, in Mr. McGregors vocational experience with other furniture companies, the use of a stool is allowed in similar areas of production for pregnant employees or for employees with low back injuries. Additionally, Mr. McGregors labor market survey for assembly positions found over thirty-five different assembly jobs with similar job descriptions, which were the type of work that could be performed seated or standing. Accordingly, the pre-assembly job offered to plaintiff is a job commonly available in the furniture industry and defendant-employers provision of a stool to plaintiff to alternate sitting and standing is not only a reasonable accommodation but a slight modification which does not affect the essential job functions or render the job unavailable in the marketplace as make-work.
9. The pre-assembly jobs as shown on the stipulated videotape which are being performed by the dark-haired woman and at the bench are appropriate to plaintiffs restrictions and plaintiff is able to perform those jobs in the opinion of his treating physician. The other jobs in the videotape are not appropriate to plaintiffs restrictions.
10. The job performed by the dark-haired woman on the videotape and the job at the bench which are within plaintiffs restrictions and available in the marketplace were offered to plaintiff by letters dated September 15, 1999 and October 15, 1999. The September 15, 1999 letter stated that the job offered was the pre-assembly position and that a stool would be provided. The October 15, 1999 letter gave even greater detail including salary information as well as that the job was contained in the videotape presented to plaintiffs treating physician. Based on the two letters, in particular the second letter which contains great detail, it is clear that the pre-assembly job approved by the treating physician after viewing the videotape and available in the marketplace was specifically offered to plaintiff. Furthermore, plaintiff actually viewed the job himself on October 20, 1999. Moreover, plaintiffs attorneys letter of refusal dated October 20, 1999 makes it clear that plaintiff understood which job was offered and that it was in fact the pre-assembly job contained in the videotape. At that time the reason given for refusal was that the job as modified was not available in the marketplace and that performing the job could be awkward from a seated position. However, based on the greater weight of the evidence of record, neither of plaintiffs concerns merits a justified refusal of the job offer for the pre-assembly position.
13. Accordingly, plaintiffs refusal of the pre-assembly position, which was within his restrictions and shown on the videotape and offered to him with slight accommodations by two letters from defendant-employer on two occasions is unreasonable and unjustified.
 ***********
Based on the foregoing stipulations and findings of fact, the Full Commission concludes as follows
 CONCLUSIONS OF LAW
1. The pre-assembly job as shown on the videotape as offered by defendant-employer in the letters dated September 15, 1999 and October 15, 1999 is within plaintiffs physical restrictions and available in the open and competitive labor market regardless of the provision of a stool for sitting and standing which is a reasonable accommodation and only a slight modification that does not affect the essential job functions of the position. N.C. Gen. Stat. 97-32.
2. The pre-assembly job was offered to plaintiff in a reasonable and appropriate manner by two letters, the latter of which gave great detail about the job offered. Accordingly, plaintiffs refusal to return to work in the pre-assembly position on October 20, 1999 was unjustified. Therefore, defendants are entitled to suspend plaintiffs total disability benefits beginning October 20, 1999 and continuing until such time as plaintiff ceases his unjustified refusal. N.C. Gen. Stat. 97-32.
 ***********
Based on the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following
 ORDER
1. Plaintiffs total disability benefits are hereby suspended beginning October 20, 1999 until such time as plaintiff ceases his unjustified refusal of suitable employment.
2. Each party shall bear its own costs.
This the ___ day of April 2001.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/______________ RENE C. RIGGSBEE COMMISSIONER